Filed 8/8/25  P. v. Ransom CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TYWAN RENE RANSOM,<br><br>　　　Defendant and Appellant. | E083988<br><br>(Super.Ct.No. FSB702709)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  Reversed with directions.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Elizabeth M. Renner, and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

1

Jason Anderson, District Attorney (San Bernardino), and Brent J. Schultze, Deputy District Attorney, as Amicus Curiae.

Tywan Ransom was convicted of murder for a killing that he committed in 2007 when he was 16 years old. Ransom appeals from the trial court's denial of his petition to recall his 50-years-to-life sentence and resentence him under Penal Code section 1170, subdivision (d). (Unlabeled statutory citations refer to this code.) The court ruled that he was ineligible for resentencing because he was not serving life without the possibility of parole (LWOP) and thus did not meet the requirements of section 1170, subdivision (d)(1) (§ 1170(d)(1)), and he had not satisfied other requirements for eligibility under section 1170, subdivision (d)(2) (§ 1170(d)(2)). The court declined to apply *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), which held that juvenile offenders sentenced to the functional equivalent of LWOP are entitled to relief under section 1170(d)(1) because of the constitutional guarantee of equal protection. (*Heard*, at p. 612.)

On appeal, Ransom argues that his sentence was the functional equivalent of LWOP, so he is eligible for relief under *Heard*. He also argues that he otherwise demonstrated his eligibility under section 1170(d)(2). We agree with Ransom that he is eligible for recall of his sentence and resentencing. And because the recall of his sentence will result in a nonfinal judgment, he also is entitled to a juvenile court transfer hearing under Welfare and Institutions Code section 707. (*People v. Padilla* (2022) 13 Cal.5th 152, 158 (*Padilla*).) We therefore reverse the order denying his petition and remand for a transfer hearing.

2

BACKGROUND

I.      *Ransom's offense, conviction, and sentencing*

On July 16, 2007, when Ransom was 16 years old, he shot and killed 15-year-old Cecil Scott.  (*People v. Ransom* (July 11, 2012, E052215) [nonpub. opn.].)  Ransom was arrested in 2009 in North Carolina.  (*Ibid.*)  He was in possession of a gun and over 50 Ecstasy pills.  (*Ibid.*)  In recorded jailhouse phone calls, Ransom threatened to beat his girlfriend if she told the police anything.  (*Ibid.*)  He also asked a family member to ensure that his girlfriend did not talk to the police.  (*Ibid.*)  Ransom denied that he was the shooter and testified at trial that he was at his aunt's apartment when Scott was shot. (*Ibid.*)

In September 2010, a jury convicted Ransom of first degree murder and found true the allegation that he personally and intentionally discharged a firearm, causing great bodily injury or death.  (§§ 187, subd. (a), 12022.53, subd. (d).)  In November 2010, the court sentenced Ransom to a total of 50 years to life in prison, consisting of 25 years to life on the murder count and a consecutive term of 25 years to life on the firearm enhancement.  Ransom appealed, and we affirmed the judgment in an unpublished opinion.  (*People v. Ransom*, *supra*, E052215.)

II.     *Ransom's petition under section 1170(d)(1)*

In December 2023, Ransom filed a petition for recall and resentencing under section 1170(d)(1).  The provision permits a juvenile offender who "was sentenced to imprisonment for life without the possibility of parole" and has been incarcerated for at

least 15 years to "submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A).) Ransom's form petition cited *Heard*.

Ransom checked boxes on the form petition indicating that (1) he did "not have a juvenile adjudication for assault or other felony crime(s) with a significant potential for harm to victims prior to this offense," and (2) he had "performed acts that tend to indicate rehabilitation or the potential for rehabilitation," including "availing [himself] of rehabilitation, educational or vocational programs, using self-study for self-improvement, and/or showing evidence of remorse."

Ransom submitted a brief with the form petition. He argued that his 50-years-to-life sentence was the functional equivalent of LWOP and that *Heard*'s equal protection holding was binding on the trial court. He further argued that he satisfied the other eligibility requirements under section 1170(d)(1) and section 1170(d)(2), so the court had to recall his sentence. Ransom contended that once the court recalled his sentence, he was entitled to a juvenile court transfer hearing under Proposition 57.

Ransom also submitted written statements, including one "letter of remorse and apology," three "insight letter[s]," and an essay entitled, "'Thou Shall Not Kill.'" (Capitalization omitted.) In the letter of remorse and apology, he apologized to Scott and Scott's family "for being responsible for [Scott's] murder" and for his lack of remorse during his trial and sentencing. The first insight letter described Ransom's troubled childhood and relationship with his father and the absence of his mother from his life. The second insight letter described how Ransom was in "a mental state of denial" about

4

his crime for the first several years of his prison sentence; he eventually started attending church services, "stopped running from [the] truth," and accepted "full responsibility for [his] senseless, violent and impulsive crime against" Scott. The third insight letter described his work toward rehabilitation. In the essay, Ransom "acknowledged that [he] killed" Scott and "sinned against God by breaking his commandment."

Ransom additionally submitted his high school equivalency certificate; his high school equivalency test results; certificates of completion for courses in job preparation and career exploration, writing, yoga and meditation, life skills, financial literacy, cognitive awareness, anger management, nonviolent conflict resolution, and recovery maintenance; and community college materials showing that he had taken a number of courses. Ransom also included documentation showing that he was engaged in a treatment program for substance use disorders.

The court appointed counsel for Ransom and set a hearing on the petition. The People filed an opposition brief arguing that Ransom was ineligible for relief because he was not sentenced to LWOP, *Heard* was wrongly decided and was inconsistent with *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), and *Heard* involved nonhomicide offenses and therefore was distinguishable. In addition, the People asserted that Ransom's sentence was not the functional equivalent of LWOP, because he was entitled to a youth offender parole hearing under section 3051, which gave him a meaningful opportunity for release during his 25th year of incarceration. (§ 3051, subd. (b)(3) ["A person who was convicted of a controlling offense that was committed when the person

5

was 25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration"].) The People also argued that Ransom was ineligible for relief because he "failed to appropriately describe his remorse and work toward rehabilitation" (capitalization and boldface omitted), he had a 2017 conviction for possession of a deadly weapon by a prisoner (§ 4502, subd. (a)), and he had a juvenile adjudication for possession of a concealed weapon by a minor (former § 12101, subd. (a)(1)), a felony.

III.    *The court's ruling*

The hearing on Ransom's petition occurred in May 2024. Scott's family members were present and wanted to present victim impact statements. The court heard their statements but noted that the statements would not affect whether Ransom was eligible for recall and resentencing as a legal matter.

After hearing the victim impact statements and the parties' arguments, the court denied Ransom's petition, concluding that he was statutorily ineligible for resentencing under section 1170(d)(1) and (d)(2). The court reasoned that Ransom's sentence would be the functional equivalent of LWOP were it not for section 3051. But he was entitled to a youth offender parole hearing during his 25th year of incarceration under section 3051, so his sentence was "basically now 25 years to life" and not the functional equivalent of LWOP. The court indicated that it also agreed with the People that *Heard* was inconsistent with our Supreme Court's decision in *Franklin*.

6

The court further found that Ransom did not meet the requirements for resentencing under section 1170(d)(1) and (d)(2) for the following reasons: He was on juvenile probation for possession of a firearm at the time of the present offense, he committed the present offense with a firearm, and he fled to North Carolina where he evaded arrest for two years. He again was found in possession of a firearm in North Carolina. He threatened his girlfriend to prevent her from testifying or making statements to law enforcement, and at trial he denied that he was the killer. He was convicted of possessing a deadly weapon in prison. And his statements of remorse did "not adequately show insight into the true nature of the harm that [he] caused" and the harm expressed by Scott's family members.

The court observed that if Ransom were eligible for recall of his sentence and resentencing, then he would be entitled to a juvenile court transfer hearing. But if the juvenile court were to transfer the matter back to criminal court, then the court would reimpose the same 50-years-to-life sentence. The court reasoned that, for all the reasons already explained, the sentence was appropriate even accounting for Ransom's age at the time of the offense.

## DISCUSSION

Relying on *Heard*, Ransom argues that the trial court erred by concluding that he is ineligible for relief under section 1170(d)(1). He further argues that he otherwise demonstrated his eligibility under section 1170(d)(2). We agree on both counts. The court erred by denying his petition, and the error was prejudicial. Once Ransom

7

demonstrated his eligibility, the court was required to recall his sentence. Ransom then would have been entitled to a juvenile court transfer hearing.

I.  *Section 1170(d)(1) and related juvenile sentencing law*

In 2010, *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) "held that the Eighth Amendment categorically 'prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.' [Citations.] *Graham* explained that a juvenile offender convicted of a nonhomicide crime need not be guaranteed eventual release, but if a sentence of life is imposed on such a juvenile offender, then that offender must be provided 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.'" (*People v. Superior Court (Valdez)* (2025) 108 Cal.App.5th 791, 797.)

In *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*), the United States Supreme Court "extended *Graham*'s reasoning (but not its categorical ban) to juvenile offenders who commit homicide. [Citation.] *Miller* held 'that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments"' [citation] and that a judge or jury sentencing a juvenile offender for a homicide crime must have the opportunity to consider certain specified mitigating circumstances related to the offender's youth before imposing LWOP." (*Valdez*, *supra*, 108 Cal.App.5th at pp. 797-798.)

In response to *Graham* and *Miller*, the Legislature created the section 1170, subdivision (d), recall and resentencing procedure for juvenile offenders sentenced to

LWOP.  (*People v. Sorto* (2024) 104 Cal.App.5th 435, 442 (*Sorto*); *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1048 (*Bagsby*); former § 1170, subd. (d)(2), enacted by Stats. 2012, ch. 828, § 2.)  Section 1170, subdivision (d)(1)(A), states:  "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."

Shortly after *Miller*, the California Supreme Court decided *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*).  *Caballero* "held that 'a 110-year-to-life sentence imposed on a juvenile convicted of nonhomicide offenses contravenes *Graham*'s mandate against cruel and unusual punishment under the Eighth Amendment.' [Citation.]  Because the juvenile defendant was not eligible for parole for 100 years, the court reasoned that the indeterminate sentence 'with a parole eligibility date that falls outside the juvenile offender's natural life expectancy' amounted to the 'functional equivalent' of a sentence to LWOP, which the Eighth Amendment prohibits for juvenile offenders convicted of nonhomicide crimes."  (*Valdez*, *supra*, 108 Cal.App.5th at p. 798.)

The Legislature enacted section 3051 to bring juvenile sentencing into conformity with *Graham*, *Miller*, and *Caballero*.  (*Valdez*, *supra*, 108 Cal.App.5th at p. 798.)  Section 3051 took effect on January 1, 2014.  (*Ibid.*)  The statute "requires the Board of Parole Hearings 'to conduct a "youth offender parole hearing" during the 15th, 20th, or 25th year of a juvenile offender's incarceration' (§ 3051, subd. (b)), depending on the

9

offender's "'controlling offense'" (*id.*, subd. (a)(2)(B)). [Citation.] Although section 3051 originally excluded juvenile offenders sentenced to LWOP from youth offender parole eligibility, the Legislature subsequently amended the statute to provide that such offenders are eligible for youth offender parole hearings in the 25th year of incarceration." (*Valdez*, at p. 798.)

II.    Heard *and the equal protection challenge to section 1170(d)(1)*

By its terms, relief under section 1170(d)(1) is limited to juvenile offenders who were sentenced to LWOP. (§ 1170, subd. (d)(1)(A).) *Heard* held that constitutional principles of equal protection require that relief under section 1170(d)(1) be extended to juvenile offenders who were sentenced to the functional equivalent of LWOP. (*Heard*, *supra*, 83 Cal.App.5th at pp. 633-634.) We agree with *Heard*.

"We independently review equal protection claims." (*Sorto*, *supra*, 104 Cal.App.5th at p. 442.) "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection," the "pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*People v. Hardin* (2024) 15 Cal.5th 834, 850-851.) Because section 1170(d)(1) does not involve a suspect classification or a fundamental right, the applicable standard of review is the rational basis test. (*Hardin*, at p. 847; *Heard*, *supra*, 83 Cal.App.5th at p. 631.) "Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably

10

conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"' [Citation.] '[T]he logic behind a potential justification need [not] be persuasive or sensible—rather than simply rational.'" (*Hardin*, at p. 852.)

The *Heard* court concluded that there was no reasonably conceivable rational basis "for making juvenile offenders sentenced to explicit terms of life without parole eligible for resentencing under section 1170, subdivision (d)(1), while denying the same opportunity to juvenile offenders sentenced to terms that amount to the functional equivalent" of LWOP. (*Heard*, *supra*, 83 Cal.App.5th at p. 631.) The court rejected several potential justifications for the disparate treatment.

First, the concern that an LWOP sentence for juvenile offenders "'could be excessive'" was not a rational basis for the statute's disparate treatment—"the same concern applies equally to juveniles sentenced to the functional equivalent" of LWOP. (*Heard*, *supra*, 83 Cal.App.5th at p. 632.)

Second, "the relative culpability of each group" does not justify the disparate treatment. (*Heard*, *supra*, 83 Cal.App.5th at p 632.) "Resentencing under section 1170, subdivision (d)(1), is available to juvenile offenders convicted of first degree murder

11

whose cases involve a special circumstance finding. [Citation.] Special circumstances murders are considered 'the most heinous acts' proscribed by law. [Citation.] They are 'more severe and more deserving of lifetime punishment than nonspecial circumstance first degree murder. . . . Section 1170, subdivision (d)(1), thus has the incongruous effect of extending sentencing leniency exclusively to the category of offenders generally regarded as the least deserving of it." (*Id.* at p. 633.)

Third, the "number of offenses theoretically committed by each group of offenders . . . fails to justify their disparate treatment." (*Heard*, *supra*, 83 Cal.App.5th at p 633.) A juvenile offender who commits multiple offenses and receives a lengthy aggregate prison sentence might be viewed as more culpable than a juvenile offender who commits "a single, albeit more serious offense" and receives an LWOP sentence. (*Ibid.*) But nothing in section 1170(d)(1) precludes relief for juvenile offenders who received an LWOP sentence *plus* additional terms for additional offenses or enhancements. (*Heard*, at p. 633.) Both groups of juvenile offenders may have committed multiple offenses, but only those who received LWOP sentences are eligible for relief under the statute.

The defendant in *Heard* received a sentence of 103 years to life. (*Heard*, *supra*, 83 Cal.App.5th at p. 612.) The court concluded that the sentence was the functional equivalent of LWOP. (*Id.* at p. 629.) And because the court could not identify a rational basis for the disparate treatment of the two groups—juvenile offenders sentenced to LWOP and those sentenced to the functional equivalent—the court held that denying the defendant the opportunity for resentencing under section 1170(d)(1) violated his right to

equal protection of the law.  (*Heard*, at p. 633.)  *Sorto* involved a juvenile offender sentenced to 140 years to life (*Sorto*, *supra*, 104 Cal.App.5th at p. 440), and that court agreed with *Heard* that section 1170(d)(1) "violates the constitutional guarantee of equal protection by denying relief to juvenile offenders sentenced to functionally equivalent LWOP terms" (*Sorto*, at p. 454).  The *Heard* court reaffirmed its holding in *Bagsby*, a case involving a juvenile offender sentenced to 107 years to life.  (*Bagsby*, *supra*, 106 Cal.App.5th at pp. 1046, 1054-1063.)  *Sorto* and *Bagsby* considered and rejected several more potential justifications for the disparate treatment of juvenile offenders sentenced to LWOP and those sentenced to the functional equivalent.  (*Sorto*, at pp. 450-454; *Bagsby*, at p. 1061.)

We find the analysis in *Heard* persuasive and likewise conclude that section 1170(d)(1) violates principles of equal protection by denying relief to juvenile offenders sentenced to the functional equivalent of LWOP.  The Attorney General concedes that *Heard* was correctly decided and that the trial court erred by declining to follow it.  But the San Bernardino County District Attorney submitted an amicus brief arguing that *Heard* was wrongly decided and urging us not to follow it.  The district attorney's arguments lack merit.

The district attorney argues that the Legislature enacted section 1170(d)(1) to address the constitutional problems with an LWOP sentence identified by the Eighth Amendment case law, and because that case law did not initially involve sentences that were the functional equivalent of LWOP, the Legislature had a plausible basis for

13

limiting section 1170(d)(1) to LWOP offenders.  It is true that the bill enacting section 1170(d)(1) "'"was inspired by concerns regarding sentences of life without parole for juvenile offenders'"" and that the bill was introduced or enacted after *Graham* and *Miller*, which involved LWOP sentences.  (*Heard*, *supra*, 83 Cal.App.5th at p. 617.)

The developing case law provided a reason to grant relief to LWOP juvenile offenders, but it did "not provide a reason to deny the same relief to functionally equivalent LWOP offenders."  (*Sorto*, *supra*, 104 Cal.App.5th at p. 451.)  *Graham* held that states must give "the juvenile offender a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,' and that '[a] life without parole sentence improperly denies the juvenile offender a chance to demonstrate growth and maturity.'"  (*Caballero*, *supra*, 55 Cal.4th at p. 266.)  "[T]he same concern applies equally to juveniles sentenced to the functional equivalent" of LWOP.  (*Heard*, *supra*, 83 Cal.App.5th at p. 632.)  Indeed, that is why *Caballero* extended *Graham*'s reasoning to juvenile offenders sentenced to the functional equivalent of LWOP.  (*Caballero*, at p. 268.)

The district attorney further argues that even assuming that section 1170(d)(1) violates principles of equal protection, the proper remedy is to invalidate the provision for all juvenile offenders rather than extend the provision to juvenile offenders sentenced to the functional equivalent of LWOP.  "It is true that '[w]hen a court concludes that a statutory classification violates the constitutional guarantee of equal protection of the

14

laws, it has a choice of remedies.'" (*Bagsby*, *supra*, 106 Cal.App.5th at p. 1062.) But the Legislature's preference must guide the court's choice of remedies. (*Ibid.*)

The district attorney contends that the Legislature has shown its preference by extending youth offender parole hearings to juvenile offenders serving LWOP sentences. The argument fails for reasons explained in *Bagsby*. (*Bagsby*, *supra*, 106 Cal.App.5th at pp. 1062-1063.) The Legislature extended section 3051 to LWOP juvenile offenders in 2017, and it has amended section 1170 several times since then. (*Bagsby*, at p. 1062.) Yet the Legislature has not eliminated the recall and resentencing provision in section 1170, subdivision (d). (*Bagsby*, at p. 1062.) Moreover, since *Heard* was decided in 2022, the Legislature has continued to amend section 1170 without eliminating section 1170, subdivision (d). (*Bagsby*, at p. 1063.) If the Legislature wanted to eliminate the recall and resentencing procedure in response to section 3051 or *Heard*'s equal protection holding, then the Legislature could have accomplished that result itself. By leaving the provision intact, it has signaled its preference. (*Bagsby*, at p. 1063.)

For these reasons, we conclude that constitutional principles of equal protection require that relief under section 1170(d)(1) be extended to juvenile offenders who were sentenced to the functional equivalent of LWOP.

III. *Functional equivalent of LWOP*

We further conclude that when Ransom was sentenced in 2010, his sentence of 50 years to life was the functional equivalent of LWOP. Whether Ransom's sentence "is the functional equivalent of LWOP presents a question of law on undisputed facts, which we

independently review." (*Valdez*, *supra*, 108 Cal.App.5th at p. 800.) In the context of the Eighth Amendment prohibition against cruel and unusual punishment, our Supreme Court concluded in *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*) that two 16-year-old defendants received the functional equivalent of LWOP when they were sentenced to 50 years to life and 58 years to life.[1] (*Id.* at pp. 356, 368-369.) The *Contreras* court reasoned that the defendants' earliest possible release at age 66 or age 74 did not give them a meaningful incentive to rehabilitate or a meaningful opportunity for redemption and reentry into society. (*Id.* at pp. 368-369.)

Ransom similarly was sentenced to the functional equivalent of LWOP. He committed his offense when he was 16 years old, but he was not taken into custody until he was nearly 18 years old. With a sentence of 50 years to life, he would be almost 68 years old on his earliest possible release date. Even assuming that his earliest release date fell within his expected lifespan, that chance for release would come near the end of his life, and he "will have spent the vast majority of adulthood in prison." (*Contreras*, *supra*, 4 Cal.5th at p. 368.)

The Attorney General concedes that Ransom's 50-years-to-life sentence is the functional equivalent of LWOP under *Contreras*. But the district attorney argues otherwise. The district attorney asserts that section 3051 has effectively abrogated

---

**1** Both *Contreras* defendants were convicted under the one strike law and consequently were ineligible for youth offender parole under section 3051. (*Contreras*, *supra*, 4 Cal.5th at p. 359; § 3051, subd. (h).)

16

section 1170(d)(1) because no juvenile offender to whom section 3051 applies is serving an LWOP sentence or the functional equivalent.

Section 3051 "supersede[s]" the juvenile offender's sentence and "change[s] the manner in which the juvenile offender's original sentence operates by capping the number of years that he or she may be imprisoned before becoming eligible for release on parole." (*Franklin*, *supra*, 63 Cal.4th at p. 278.)  Accordingly, our Supreme Court held in *Franklin* that juvenile offenders eligible for relief under section 3051 are not serving an LWOP sentence or its functional equivalent, because section 3051 makes them eligible for parole during their 15th, 20th, or 25th year of incarceration.  (*Franklin*, at pp. 277, 280.)  The district attorney contends that *Heard* is inconsistent with *Franklin* because *Heard* concluded that the defendant's sentence of 103 years to life was the functional equivalent of LWOP.

*Heard* addressed *Franklin* and explained why the district attorney's argument fails with respect to defendants like Ransom, who were sentenced before the effective date of section 3051.  Section 1170(d)(1) makes a defendant who "was sentenced" to LWOP eligible for relief.  (§ 1170, subd. (d)(1)(A).)  Because the statute "'"refers to the past,"'" the relevant inquiry under the provision is the sentence that was originally imposed, which might not be the same as the sentence currently being served by the defendant." (*Valdez*, *supra*, 108 Cal.App.5th at p. 800.)  Like Ransom, the defendant in *Heard* was sentenced before the effective date of section 3051.  (*Heard*, *supra*, 83 Cal.App.5th at p. 614.)  *Heard* thus reasoned:  "Although under *Franklin*, Heard's sentence as it

17

currently operates is no longer the functional equivalent of life without parole, this does not change the fact that the sentence *was* a de facto life without parole sentence at the time it was imposed." (*Id.* at p. 629.) *Sorto* rejected the argument that *Heard* "'runs roughshod'" over *Franklin* for the same reason. (*Sorto*, *supra*, 104 Cal.App.5th at pp. 447-448.) And *Bagsby* reaffirmed *Heard*'s analysis, again concluding that *Franklin* does not undermine *Heard*. (*Bagsby*, *supra*, 106 Cal.App.5th at pp. 1056-1057; but see *People v. Ortega* (2025) 111 Cal.App.5th 1252, 1264 [disagreeing with *Heard* and concluding that "*Heard* cannot be reconciled with the Supreme Court's analysis in *Franklin*"].)

We agree with *Heard*, *Sorto*, and *Bagsby* that the relevant inquiry under section 1170(d)(1) "is the sentence that was originally imposed" (*Valdez*, *supra*, 108 Cal.App.5th at p. 800), and *Franklin* does not require a contrary result. In 2010, section 3051 did not exist, so Ransom "was sentenced" to the functional equivalent of LWOP within the meaning of section 1170, subdivision (d)(1)(A).

*People v. Munoz* (2025) 110 Cal.App.5th 499 (*Munoz*), review granted June 25, 2025, S290828, recently held that, even without a youth offender parole hearing under section 3051, a sentence of 50 years to life for a 15-year-old defendant is not the functional equivalent of LWOP. (*Munoz*, at pp. 502-503, 507.) The *Munoz* defendant, who was convicted of first degree murder, was eligible for release at age 65. (*Id.* at pp. 503, 508.) He argued that he was eligible for relief under section 1170(d)(1) and *Heard*. (*Munoz*, at p. 507.) The *Munoz* court distinguished *Heard*, *Sorto*, and *Bagsby* on

18

the ground that in those cases the minimum periods of incarceration before parole eligibility were "much greater than 50 years." (*Munoz*, at p. 507.) *Munoz* also acknowledged *Contreras*'s holding that a sentence of 50 years to life is the functional equivalent of LWOP. (*Munoz*, at p. 510.) But *Munoz* concluded that *Contreras* did not control, because the *Contreras* defendants "did not commit murder, which was an integral part of the Supreme Court's analysis" in *Graham*, and *Contreras* "considered only whether the defendants' sentences violated the Eighth Amendment" and not an equal protection challenge to section 1170(d)(1). (*Munoz*, at pp. 510-511; accord, *People v. Thompson* (July 15, 2025, B333097) __ Cal.App.5th __ [2025 Cal.App. LEXIS 453, at p. *20] [agreeing with *Munoz* "that the *Contreras* notion of functional equivalence does not answer" whether a juvenile homicide offender sentenced to 50 years to life is eligible for relief under section 1170(d)(1) as a matter of equal protection].)

     *Munoz* does not persuade us that *Contreras* is inapplicable. We agree with the dissent in *Munoz* that although *Contreras* was an Eighth Amendment case, "its reasoning must inform our decision whether a 50-years-to-life sentence is likewise functionally equivalent to an LWOP sentence for purposes of an equal protection challenge." (*Munoz*, *supra*, 110 Cal.App.5th at p. 513 [dis. opn. of Feuer, J.]; accord, *People v. Cabrera* (2025) 111 Cal.App.5th 650, 654 [conc. opn. of Hoffstadt, P.J.] [*Contreras*'s holding "that 'a sentence of 50 years to life is functionally equivalent to LWOP'" is "inescapable and indistinguishable" for purposes of the defendant's equal protection challenge to section 1170(d)(1)].) The *Contreras* court's reasoning is particularly relevant to

19

challenges to section 1170(d)(1), "which was enacted in response to the principles articulated in [*Graham*, *supra*, 560 U.S. 48]—the decision at the heart of *Contreras*." (*Munoz*, at p. 513 [dis. opn. of Feuer, J.].)  In addition, the fact that the *Contreras* defendants committed nonhomicide offenses is not a good reason to distinguish *Contreras* in this context.  (*Munoz*, at pp. 518-519 [dis. opn. of Feuer, J.].)  Although the *Contreras* defendants did not commit murder, their crimes nevertheless "were egregious, including multiple counts of forcible rape and other sex crimes against two minor victims."  (*Munoz*, at p. 518 [dis. opn. of Feuer, J.].)  Our high court described the crimes as "'awful and shocking'" and emphasized that it was "not minimiz[ing] the gravity of defendants' crimes or their lasting impact on the victims and their families."  (*Contreras*, *supra*, 4 Cal.5th at p. 380; *Munoz*, at p. 518 [dis. opn. of Feuer, J.].)  *Contreras*'s reasoning—that the length of the sentences failed to give the defendants a meaningful incentive to rehabilitate or a meaningful opportunity for redemption and reentry into society—still applies to long sentences for relatively more serious homicide offenses.

For all of these reasons, we conclude that Ransom's sentence of 50 years to life was the functional equivalent of LWOP.  The constitutional guarantee of equal protection requires that the court extend to him eligibility for relief under section 1170(d)(1).

IV.     *Other eligibility requirements under section 1170(d)(2)*

The trial court concluded that regardless of whether Ransom was sentenced to LWOP or its functional equivalent, he did not satisfy the other eligibility requirements

20

under section 1170(d)(2).  Ransom argues that the court erred in that respect as well.  We agree.

Under section 1170(d)(2), the defendant's petition must include a statement that the defendant was under 18 at the time of the offense, "a statement describing their remorse and work towards rehabilitation," and a statement that "one of four qualifying circumstances is true" (*Sorto*, *supra*, 104 Cal.App.5th at p. 443).  Those four qualifying circumstances are the following:  "(A)  The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.  ¶  (B)  The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall.  ¶  (C)  The defendant committed the offense with at least one adult codefendant.  ¶  (D)  The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."  (§ 1170, subd. (d)(2)(A)-(D).)

The defendant has the burden of showing that one of the four qualifying circumstances is true.  (*People v. Harring* (2021) 69 Cal.App.5th 483, 488 (*Harring*).)  "If the court finds by a preponderance of the evidence that one or more" of the four qualifying circumstances is true, then "the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as

21

if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).)

Ransom's petition stated that he was 16 years old at the time of his offense and included several statements describing his remorse and work toward rehabilitation. He thus satisfied those threshold requirements for eligibility under section 1170(d)(2).

In addition, Ransom's petition declared under penalty of perjury that (1) he did not have a prior juvenile adjudication for assault or other felony crimes with a significant potential for harm to victims, and (2) he had performed acts tending to indicate rehabilitation or the potential for rehabilitation. Ransom made the required showing regarding a prior juvenile adjudication.

To determine whether a felony crime has "a significant potential for personal harm to victims" (§ 1170, subd. (d)(2)(B)), the court examines the elements of the offense alone. (*Harring*, *supra*, 69 Cal.App.5th at pp. 498, 502-503.) The court does not engage in "a broader inquiry into [the] underlying conduct" constituting the commission of the offense in the particular case. (*Id.* at p. 498.) Nor does the court "assess an imagined typical case of the crime at issue and evaluate whether it involves conduct that creates and poses the requisite risk of harm to victims." (*Id.* at p. 502.)

The court assesses the conduct necessary to constitute the elements of the offense "in relation to assault, the single enumerated crime within the category." (*Harring*, *supra*, 69 Cal.App.5th at p. 502.) Assault "requires an act that by its nature would directly and probably result in the application of physical force to a person." (*Id.* at

22

p. 503.)  "Viewed in light of assault, a crime risking harm to victims within the meaning of" section 1170(d)(2) "necessarily involves an act that by its nature creates the risk of physical harm to another, even if no physical injury actually occurs."  (*Harring*, at p. 503.)

The determination of the elements of an offense is a question of law that we independently review.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  Likewise, whether that offense involves a significant potential for personal harm to victims is a question of law that we independently review.  (See *People v. Aguilar* (2016) 245 Cal.App.4th 1010, 1017 [whether a crime involves moral turpitude is determined by the elements of the offense alone and "is a question of law for the court to resolve"].)

According to the probation report, Ransom had a single prior juvenile adjudication for possession of a concealed weapon by a minor.  (Former § 12101, subd. (a)(1); see Cal. Law Revision Com. com., Deering's Ann. Pen. Code (2025 ed.) foll. § 29610 [noting that § 29610 continues former § 12101, subd. (a)(1) without substantive change].)  The relevant statutory provision stated that "'[a] minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person.'"  (*In re D.D.* (2015) 234 Cal.App.4th 824, 829.)  Possession means having control, care, and management of the firearm.  (*In re Charles G.* (2017) 14 Cal.App.5th 945, 951.)  "Possession may be actual or constructive.  [Citation.]  It does not require that a person be armed or that the weapon be within a person's immediate vicinity.  [Citation.]  Rather,

23

it encompasses having a weapon in one's bedroom or home or another location under his or her control, even when the individual is not present at the location." (*Ibid.*)

Possession of a concealable firearm by a minor does not "necessarily involve[] an act that by its nature creates the risk of physical harm to another." (*Harring*, *supra*, 69 Cal.App.5th at p. 503.) The offense does not require the firearm to be loaded or even operable. (*People v. Nelums* (1982) 31 Cal.3d 355, 358 [possession of a concealable firearm does not require proof that the firearm is operable]; compare § 29610 [possession of a firearm by a minor] with § 25850 [carrying a loaded firearm in public].) Nor does it require the firearm to be used in any particular manner. (See, e.g., § 12022.53, subds. (b)-(d) [sentence enhancements for using a firearm during the commission of enumerated felonies].) And Ransom could have committed the offense even if the unloaded or inoperable firearm was nowhere near him or anyone else but was merely in his bedroom or another location under his control. The elements of the offense alone fall far short of showing "a significant potential for personal harm to victims." (§ 1170, subd. (d)(2)(B); see *Harring*, *supra*, 69 Cal.App.5th at p. 503 [elements of burglary do not involve an act that necessarily creates a potential for harm to victims].)

The district attorney asserts that the possession offense "did have potential for harm to victims, as demonstrated by the later murder of Cecil Scott." Those case-specific facts are not relevant to our inquiry under section 1170(d)(2). And the mere potential for harm to victims is not the applicable standard. The district attorney's arguments have no

tendency to show that the elements of the possession offense involve an act that necessarily creates the risk of physical harm to another.

In short, Ransom's only prior juvenile adjudication does not fall within the category of crimes described by section 1170, subdivision (d)(2)(B), and the People submitted no evidence of any other juvenile adjudications. As a matter of law, the record compelled a finding by a preponderance of the evidence that Ransom's statement under section 1170, subdivision (d)(2)(B), was true. (See *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 [when the issue on appeal turns on a failure of proof, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"], disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.) Given that conclusion, we need not decide whether Ransom also proved by a preponderance of the evidence that he had "performed acts that tend to indicate rehabilitation or the potential for rehabilitation." (§ 1170, subd. (d)(2)(D).) He needed to show only that one of the four qualifying circumstances was true.

For all of these reasons, the court erred by concluding that Ransom was ineligible for relief under section 1170(d)(2).

## V.    *Prejudicial error*

We lastly consider whether the trial court's errors prejudiced Ransom. The equal protection violation is prejudicial unless the error was harmless beyond a reasonable doubt. (*People v. Taylor* (1982) 31 Cal.3d 488, 499, 501-502.) The error in applying the eligibility requirements of section 1170(d)(2) is prejudicial if it is reasonably probable

that Ransom would have obtained a more favorable result absent the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We conclude that Ransom was prejudiced under either standard.

Once Ransom demonstrated his eligibility for relief, section 1170, subdivision (d)(5), required the court to recall his sentence and hold a resentencing hearing. The recall of a sentence "'effectively vacate[s] [the defendant]'s original sentence and commitment.'" (*People v. Rogers* (2025) 108 Cal.App.5th 340, 360.) The recall thus would result in a nonfinal judgment entitling Ransom to the ameliorative benefits of Proposition 57, namely, a hearing in the juvenile court to determine whether to transfer his case to the criminal court (Welf. & Inst. Code, § 707). (*Padilla*, *supra*, 13 Cal.5th at p. 158; *People v. Montes* (2021) 70 Cal.App.5th 35, 47-48; *Bagsby*, *supra*, 106 Cal.App.5th at pp. 1064-1065.) Indeed, the trial court acknowledged that if Ransom were eligible for recall of his sentence and resentencing, then he would be entitled to a juvenile court transfer hearing. Such a hearing has the potential for reducing his punishment if the juvenile court decides that criminal adjudication of his case is not appropriate. (*Padilla*, *supra*, 13 Cal.5th at p. 170.) The court's errors consequently deprived Ransom of a more favorable result, and the errors were not harmless beyond a reasonable doubt.

The Attorney General concedes that if Ransom is eligible to have his sentence recalled, then the recall would trigger the retroactive application of Proposition 57, and Ransom "may seek a transfer hearing in juvenile court." However, the Attorney General

argues that a prejudice assessment is "premature" and urges us to remand for a "full hearing" as to Ransom's eligibility under section 1170(d)(2). The argument lacks merit.

First, we generally may not reverse an erroneous order without considering prejudice. "Indeed, in California, harmless error review is a matter of constitutional mandate: 'The California Constitution imposes upon this court an obligation to conduct "an examination of the entire cause" and reverse a judgment below for error only upon determining that a "miscarriage of justice" has occurred.'" (*People v. Hendrix* (2022) 13 Cal.5th 933, 941.) A consideration of prejudice thus is necessary in any appeal involving an erroneous order, and the assessment cannot be characterized as premature.

Second, the Attorney General bases his argument on the incorrect premise that the trial court did not decide whether Ransom was eligible for relief under section 1170(d)(2). The record shows that the court did so, and Ransom's opening brief argued that the court's ruling on the section 1170(d)(2) eligibility requirements was erroneous. The Attorney General does not address that argument in the respondent's brief (and raises the claimed lack of a ruling only in supplemental briefing on the issue of prejudice). Instead, the respondent's brief cites *Heard* for the proposition that we should "remand[] for a recall and resentencing hearing pursuant to section 1170, subdivision (d)." That was the disposition in *Heard* because the trial court denied the defendant's petition solely on the ground that he was not sentenced to LWOP. (*Heard*, *supra*, 83 Cal.App.5th at pp. 621-622.) The trial court did not otherwise "consider the merits of the petition," so the

appellate court remanded for the trial court to consider "whether, 'by a preponderance of the evidence,'" one or more of the qualifying circumstances was true. (*Id.* at p. 634.) But there would be no point in such a remand here—the trial court has already ruled on the merits of the petition under section 1170(d)(2), and the record on appeal shows that ruling was erroneous.

In sum, Ransom was prejudiced by the court's erroneous determination that he was not eligible for recall of his sentence and resentencing under section 1170(d)(1) and (d)(2). Ransom demonstrated that he was eligible for relief, and the court was required to recall his sentence. The recall would have triggered his right to a juvenile court transfer hearing. We consequently remand with directions to grant Ransom's petition, recall his sentence, and refer the case to the juvenile court for a transfer hearing. (*Montes*, *supra*, 70 Cal.App.5th at p. 49.)

## DISPOSITION

The order denying Ransom's petition for recall of his sentence and resentencing is reversed. On remand, the superior court shall enter an order granting the petition, recalling Ransom's sentence, and referring the case to the juvenile court for a transfer hearing. If the juvenile court determines that it would not have transferred Ransom to criminal court under current law, then it shall treat Ransom's conviction as a juvenile adjudication as of the date of his conviction and impose an appropriate disposition. If the juvenile court determines that it would have transferred Ransom to criminal court, then it

28

shall transfer the matter back to criminal court, which shall hold a resentencing hearing under section 1170, subdivision (d).

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.